1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE GOMIS, | 1:07-CV-00777-LJO-TAG HC |
|               Petitioner, | REPORT AND RECOMMENDATION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS FOR LACK OF JURISDICTION; ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |
|    v. | |
| U.S. ATTORNEY GENERAL ALBERTO R. GONZALEZ, et al., | |
|              Respondents. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## BACKGROUND

On May 3, 2006, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Northern District of California.  (Doc. 1, entitled "Emergency Petition for Writ of Habeas Corpus, Complaint for Declaratory and Injunctive Relief, Emergency Protective and Restraining Order," collectively referred to as the "Petition").  On May 25, 2007, the case was transferred to the Eastern District of California.  (Doc. 1, Order of Transfer).

In the Petition, Petitioner alleges, inter alia, the following: (1) Petitioner has been under "mandatory executive detention since May 24, 2005"; (2) Petitioner was under "constructive" restraint in France from September 1998 until June 2002; (3) Petitioner was under "constructive" restraint in the United States by the federal government from June 2002 until June 2003; (4) Petitioner was subjected to a "physical" kidnapping in the United States from June 2003 until

July 2004; (5) Petitioner was held in "constructive" restraint in France from July 2004 until May 2005; and (6) Petitioner has been in federal custody in the United States from May 2005 until the filing of his Petition. (Doc. 1, Petition, pp. 4-5). The Petition further alleges that Petitioner is subject to a final removal order dated December 28, 2005. (Doc. 1, Petition, p. 7). Petitioner alleges that the 2005 order of removal was wrongfully based on the government's theory that Petitioner was an "arriving alien" who had previously been deported from the United States in July 2004 and is thus barred from re-entering the United States within five years. (Id.). Petitioner maintains that he is in fact a citizen of the United States and that the removal order is illegal. (Id.).

Petitioner states that he is "*challenging the validity of the related removal order and the constitutionality of his 'civil' detention in a 'criminal institution'*." (Doc. 1, Petition, p. 3) (Emphasis supplied). Petitioner goes on to challenge various factual and legal contentions made by the federal government during his removal proceedings, including, inter alia, the following: (1) that Petitioner is not a citizen of the United States; (2) that Petitioner was an "arriving alien" because he was unlawfully removed from the United States in 2004; (3) that he is subject to detention in a penal institution; and (4) that he is subject to "exclusion" or "deportation." (Doc. 1, Petition, p. 4). Petitioner also challenges the "validity of any current and former order of 'deportation' and 'inadmissibility.'" (Id.).

In his prayer for relief, Petitioner asks, inter alia, for (1) a declaration that "the 1998 construed 'deportation/exclusion' order and execution were illegal;" (2) a declaration that "the 2003 and 2004 detention and detention in 'penal institution' were illegal;" (3) an order requiring Respondent and his agents "to stay away from the petitioner;" and (4) an award of $200 million in monetary damages as well as an additional $6,500 for each hour of "physical or constructive detention since September 10, 1998." (Doc. 1, Petition, p. 13).[1]

---

[1]Petitioner also seeks a stay of removal until a series of conditions has been met, including, inter alia: (1) issuance of a subpoena duces tecum to "former CIA operative Valerie Plame-Wilson"; (2) Petitioner's receipt of all transcripts of proceedings since 1998; (3) an evidentiary hearing "on the authenticity of all the alleges statements made by Petitioner since 1983"; (4) the contacting of various Law Schools "for Amici Curiae purposes"; (5) an Inspector General's investigation into Petitioner's claims of misconduct by Bakersfield and San Francisco ICE agents; and (6) receipt by Petitioner of prior Freedom of Information Act requests, including "U.S. daily Presidential INTELLIGENCE BRIEF from 1983 to present." (Doc. 1, pp. 11-12).

DISCUSSION

On May 11, 2005, Public Law 109-13 was enacted.  Section 106 of that law (i.e., the "RIDA"), is entitled "Judicial Review of Orders of Removal."  Section 106 amends 28 U.S.C. § 1252, providing in pertinent part as follows:

> Notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision...<u>a petition for review filed in an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered</u> or issued under any provision of this Act, except as provided in subsection (e)...."

(Emphasis supplied.)

The plain language of Section 106 thus divests the federal district court of jurisdiction in habeas corpus cases involving challenges to a final order of removal, deportation, or exclusion, and places exclusive jurisdiction for judicial review of such orders in the federal appeals court for the district in which the removal order was issued.

In this case, Petitioner alleges various violations of law during the proceedings culminating in the final order of removal in December 2005.  He specifically challenges various factual and legal determinations made by Respondent during the course of that proceeding, including the determinations that Petitioner was not a citizen of the United States and that he had illegally returned to the United States after being removed in 2004.  Although Petitioner also challenges a series of "constructive" and "physical" detentions since 1998, it appears to the Court that the gravamen of the Petition challenges a "final order or removal, deportation, or exclusion," which, pursuant to the RIDA, would clearly be outside of this Court's jurisdiction.

Although at the time of its enactment the RIDA contained a provision for the transfer of then-pending habeas corpus cases to the Ninth Circuit, any petitions filed on or after the May 11, 2005 effective date of the RIDA should be dismissed outright by the district court for lack of jurisdiction.  <u>Puri v. Gonzales</u>, 464 F.3d 1038, 1041 (9th Cir. 2006); <u>see</u> <u>Medellin-Reyes v. Gonzales</u>, 435 F.3d 721, 723-724 (7th Cir. 2006)("Collateral proceedings filed on or after May 11, [2005,] however, will be dismissed outright; the window for belated judicial review has closed.").

///

1   Here, Petitioner filed his Petition on May 3, 2006, almost one year *after* the effective date

2   of the RIDA.  By its express language, the RIDA divested this Court of jurisdiction to entertain a

3   collateral attack on a final order of removal, including challenges to any and all legal and factual

4   determinations upon which such a final order of removal was based.  The proper procedure in

5   such a circumstance is dismissal of the Petition for lack of jurisdiction.  Puri, 464 F.3d at 1041.[2]

6   **RECOMMENDATION**

7   For the foregoing reasons, the Court RECOMMENDS that the Petition be DISMISSED

8   in its entirety for lack of jurisdiction.

9   This Report and Recommendation is submitted to the U.S. District Judge assigned to this

10  case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules

11  of Practice for the United States District Court, Eastern District of California.  Within twenty

12  (20) days after being served with a copy, any party may file written objections with the court and

13  serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

14  Judge's Report and Recommendation."  The District Judge will then review the Magistrate

15  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

16  objections within the specified time may waive the right to appeal the District Judge's order.

17  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19  IT IS SO ORDERED.

20  Dated:  **June 1, 2007**                              **/s/ Theresa A. Goldner**

21  _____                                                   UNITED STATES MAGISTRATE JUDGE

22

23

24  [2]In Puri, the Ninth Circuit considered whether, in lieu of outright dismissal, transfer of the case directly
25  from the district court to the Ninth Circuit "in the interest of justice" under 28 U.S.C. § 1631 would have been the
    proper disposition by the district court.  In rejecting that contention, the Ninth Circuit noted that, as here, it was
26  evident that Puri was aware of the proper method of review because he had filed a petition for review in the Ninth
    Circuit challenging the final order of removal.  Puri, 464 F.3d at 1043.  In this case, the documents in the file
27  transferred from the Northern District of California contain a petition for review filed by Petitioner in the Ninth
    Circuit on April 5, 2006 challenging his final order of removal.  It is thus obvious to the Court, as it was to the Ninth
28  Circuit in Puri, that Petitioner here was aware of the proper method of review of his final order of removal.
    Moreover, Petitioner is also aware of RIDA, having cited it in his petition.  (Doc. 1, p. 3).  Hence, dismissal, rather
    than transfer, is the appropriate disposition for this petition.  Puri, 464 F.3d at 1043.

4